UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| KASSIDY BRYSON and | * | |
| REMINGTON BRYSON, as surviving | * | |
| children of GROVER BRYSON, | * | |
| and KASSIDY BRYSON, | * | |
| as Administrator of the Estate of | * | CIVIL ACTION |
| GROVER BRYSON, | * | FILE NO. _____ |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | |
| GENERAL MOTORS LLC, | * | JURY TRIAL DEMANDED |
| | * | |
| | * | |
| Defendant. | * | |

## COMPLAINT

Tedra L. Cannella
Robert H. Snyder, Jr.
Alexandra "Sachi" Cole
Devin L. Mashman
William D. Ortiz
Hannah D. Amanuel
CANNELLA SNYDER LLC
315 West Ponce de Leon Ave, NE
Suite 885
Decatur, Georgia 30030
(404) 800-4828

Leon S. Jones
JONES & WALDEN LLC
699 Piedmont Ave NE
Atlanta, Georgia 30308
(678) 701-9235

**Attorneys for Plaintiffs**

Plaintiffs Kassidy and Remington Bryson file this Complaint for Damages against Defendant General Motors LLC ("GM"), and respectfully show this Honorable Court the following:

## PREAMBLE

On August 1, 2022, Grover Earl Bryson was killed as a direct result of the defective design of the 2014 Chevrolet Silverado 2500HD he was driving. Mr. Bryson and his coworker James Stafford were traveling to pick up a part they needed for their job as loggers. Mr. Bryson's seatbelt was properly fastened. Mr. Stafford was in the front passenger seat. Mr. Bryson was traveling within the speed limit.

At approximately 7:15 a.m., Mr. Bryson and Mr. Stafford were on a two-lane highway in Oglethorpe County. At the same time, a red Jeep Gladiator travelling in the opposite direction crossed the center line into their lane of travel. The Jeep's driver, Steven Vaughan, had fallen asleep at the wheel. When he saw the Jeep, Mr. Bryson called out, steered to the right, and slammed on the brakes to try to avoid a collision, but the Jeep crashed into the front driver side of the Silverado. The Silverado, which is significantly heavier than the Jeep, crumpled upon impact. The Silverado's engine compartment and roof buckled at multiple points, causing the driver's side occupant compartment where Mr. Bryson was seated to be reduced to approximately a 12-inch-wide opening.



Mr. Vaughan walked away from the accident with a broken arm. Mr. Stafford was on the passenger side of the Silverado just a few feet away from Mr. Bryson and suffered non-life-threatening injuries because the passenger side of the Silverado did not collapse during the wreck. But with no space left in the driver's side occupant compartment, Mr. Bryson slammed into the steering wheel, crushing his chest and causing catastrophic injuries. He survived for a short period of time before succumbing to his injuries and dying. He was 53 years old.

The design of the Silverado's engine and occupant compartment and the structural system around it failed to protect Mr. Bryson in this foreseeable collision and served as the crushing force that ultimately killed him. The impact of this collision alone would not have seriously injured Mr. Bryson—both Mr. Vaughan and Mr. Stafford were subject to the same crash forces and walked away with minor injuries. The difference between Mr. Bryson and the others involved in this

collision is that he was unlucky enough to be seated in the part of the Silverado that collapsed upon impact.  If the Silverado's driver's side occupant compartment had not collapsed, Mr. Bryson would have survived this crash.

Mr. Bryson's death was entirely preventable.  If GM had designed the 2014 Silverado 2500HD to provide proper protection for its occupants in foreseeable frontal collisions, the collision would not have been fatal.  GM knew its vehicles would be involved in frontal impact collisions.  GM, like other automakers, had the resources to design and manufacture automobiles that would provide proper protection to the occupants in frontal collisions.  But GM still designed the 2014 Chevrolet Silverado 2500HD with a structural system that it knew was insufficient to withstand a foreseeable impact.  GM also knew from its internal testing and real-world crashes that the structure of the 2014 Chevrolet Silverado 2500HD was not properly designed to protect occupants in foreseeable crashes.  Despite that, GM never warned its customers about these life-threatening design defects.

## I.  PARTIES, JURISDICTION, AND VENUE

1.     Plaintiffs Kassidy and Remington Bryson are citizens and residents of Oglethorpe County, Georgia.

2.     Plaintiffs Kassidy and Remington Bryson are the surviving children of Grover Bryson.

3.     Plaintiff Kassidy Bryson is the administrator of Grover Bryson's estate.

4.      Defendant GM is a foreign limited liability company organized under the laws of Delaware with its principal place of business located at 300 Renaissance Center, Detroit, Michigan 48265.

5.      Defendant GM is 100% owned by General Motors Holding, LLC, a Delaware limited liability corporation with its principal place of business in Michigan.  General Motors Holding, LLC is, in turn, 100% owned by General Motors Company a Delaware corporation with its principal place of business in Michigan.

6.      GM is engaged in the business of designing, manufacturing, inspecting, marketing, promoting, advertising, distributing, and selling automobiles, trucks, SUVs, and other types of vehicles in the State of Georgia, in this District and Division, throughout the United States, and elsewhere.

7.      GM is subject to the jurisdiction of this Court because it regularly markets and sells automobiles, trucks, SUVs, and other types of vehicles in the State of Georgia, including thousands of the same defective 2014 Chevrolet Silverado 2500HD trucks that caused the death of Grover Bryson.

8.      GM is and has been authorized to transact business in the State of Georgia at all times relevant to this suit, including when the Plaintiffs' claims arose.

9.      Grover Bryson's death, which occurred in Georgia, arises out of, and relates to the contacts with Georgia that GM created, including the placement of its goods into the stream of commerce bound for Georgia.

10.     GM maintains an IT Information Center in Roswell, Georgia in this District and Division.  The IT Innovation Center, which is one of only three such centers nationwide, coordinates, facilitates, and runs information technology services, including research and design functions for GM's nationwide and worldwide business operations.  In total, GM employs more than 1,000 Georgia residents as employees at the IT Innovation Center in Roswell.  As a result, GM's most significant contacts with the state of Georgia are in this District, in the Atlanta Division.

11.     Venue is proper in this District because GM is subject to the Court's personal jurisdiction with respect to this case.  28 U.S.C. § 1391.

12.     Venue is proper in this division because GM resides in this Division.  Local Rule 3.1(B)(1)(a).

13.     This Court has subject matter jurisdiction over this case because there is complete diversity between Plaintiffs and GM and because the amount in controversy exceeds $75,000.00.

## II.  OPERATIVE FACTS

*The Collision*

14. Grover Bryson's brother, Wallace N. Bryson, purchased a 2014 Chevrolet Silverado 2500HD (VIN No. 1GB1CVCGXEF165337) for his company, Currin Construction.

15. Grover Bryson and James Stafford both worked as loggers for Currin Construction.

16. On August 1, 2022, at approximately 7:15 AM, Grover Bryson was driving the 2014 Chevrolet Silverado 2500HD on Highway 22 in Oglethorpe County, Georgia.  Stafford was in the passenger seat.  Bryson and Stafford were on the way to pick up a part for a job.

17. Mr. Bryson was seated normally with his seatbelt properly fastened.

18. Mr. Stafford was seated normally with his seatbelt properly fastened.

19. At the same time, Steven Vaughan was driving his 2021 Jeep Gladiator (VIN No. 1C6HJTAG5ML541876) in the opposite direction on Highway 22.

20. Mr. Vaughan had cruise control on.

21. Mr. Vaughan had been awake since 6:00 PM the previous day.  Mr. Vaughan was driving through the night from the naval base in Kings Bay, Georgia to an address in Hiawassee, Georgia.

22.   Mr. Vaughan fell asleep and his Jeep Gladiator crossed the center line into the oncoming lane of traffic, traveling directly towards Mr. Bryson and Mr. Stafford.

23.   Mr. Bryson and Mr. Stafford saw Steven Vaughan's Jeep cross into their lane.  Before the crash, Mr. Bryson yelled out to Mr. Stafford and slammed on the brakes while steering to the right.  Mr. Bryson slowed his truck to 27 miles per hour as he tried to avoid a collision.

24.   Mr. Vaughan's Jeep collided with the Silverado, with most of the impact focused on the driver's side of the Silverado.

25.   The force of the impact was not severe—the highest delta-V recorded by the Silverado's Crash Data Retrieval system was 28.6 miles per hour.

26.   Steven Vaughan's Jeep Gladiator was significantly lighter than the Chevrolet Silverado 2500HD that Mr. Bryson and Mr. Vaughan were riding in.

27.   The force generated in the collision should have been well within the range for the 2014 Chevrolet Silverado 2500HD's crash protection system to protect its occupants from severe or fatal injuries in frontal collisions.

28.   Because GM defectively designed the 2014 Chevrolet Silverado 2500HD, the lighter Jeep Gladiator crushed the driver's side of the Silverado, resulting

in excessive intrusion into the portion of the occupant compartment where Grover Bryson was sitting.

29.   A post-collision photograph of the 2014 Chevrolet Silverado shows how severely the truck's driver-side occupant compartment crumpled:



30.   The Silverado's structural system surrounding the occupant compartment "buckled" at multiple points, significantly reducing the size of the occupant compartment where Grover Bryson was seated.

31.   As a result of that structural collapse, Mr. Bryson was left with virtually no survival space around him in the crash.

32.   The fire department responding to the scene estimated the Silverado's driver-side opening to have been only 12 inches wide prior to the start of extrication.

33.    Because the 2014 Chevrolet Silverado had an inadequate occupant

protection system for foreseeable frontal collisions, it did not preserve the

occupant space around the driver's seat, causing Grover Bryson to be

crushed to death in the collision.

34.    Mr. Bryson's cause of death was the multiple chest trauma he sustained in

the collision.

35.    By comparison, the occupant compartment of the significantly lighter Jeep

Gladiator remained intact:



36.    James Stafford was seated in the first-row passenger seat, a few feet from

Grover Bryson.  The occupant compartment of the Silverado's passenger

side did not collapse because the collision occurred on the driver's side.  As

a result, Stafford suffered non-life-threatening injuries in the wreck.

37. Steven Vaughan was in the first-row driver's seat of the Jeep Gladiator, which experienced forces generated by the same collision as Bryson's Silverado.  Vaughan walked away from the collision with a broken arm.

38. But for GM's defective design of the Silverado, Grover Bryson would have suffered only minimal injuries in the collision and would not have died.

*Dangers Known to GM*

39. Frontal collisions are foreseeable to automakers, including GM.

40. Collisions at highway speeds are foreseeable to automakers, including GM.

41. Automakers have known for decades the dangers of creating an excessively weak structural system that allows intrusion into occupant space during collisions.  Those dangers include the risk of injurious contact with structures in the vehicle and death.

42. Automakers, including GM, emphasize the importance of designing vehicles that preserve occupant space in foreseeable collisions.

43. Automakers, including GM, emphasize the importance of structures deforming and managing crash energy in a controlled manner in frontal impacts.  GM understands that failure to design a vehicle that appropriately manages collision forces could result in excessive intrusion into the occupant space.

44.     Automakers, including GM, understand and emphasize the importance of designing a body structure with sufficient strength to resist intrusion under foreseeable frontal crash conditions.

45.     Despite that knowledge, GM chose to design and manufacture a structure for the 2014 Silverado 2500HD that collapses when exposed to foreseeable collision forces, creating an unreasonable risk of injury and death to front seat occupants in foreseeable frontal collisions.

46.     GM designed and manufactured the Silverado's occupant protection system and structural components knowing that they would not withstand foreseeable collision forces, increasing the occupants' risk of death when space around the occupants collapses during collisions.

47.     GM knew, or should have known, of other similar instances where its defectively designed Silverado vehicles failed to protect its occupants in survivable impacts in a manner similar to this collision.

48.     GM failed to adequately test the design of its 2014 Chevrolet Silverado 2500HD before offering the vehicles for sale to the public, putting its own customers at an unreasonable risk of death due to structural collapse during foreseeable collisions.

*GM's Defective Design*

49.    GM's known defective designs in the 2014 Silverado 2500HD include (1) that the Silverado's structural systems, including the frame, are inadequate to protect its occupants from the forces generated in foreseeable collisions, (2) that the Silverado allows excessive intrusion into the occupant space in foreseeable collisions, (3) that the strength and configuration of the structural systems surrounding the occupant compartment cause it to collapse in foreseeable collisions, (4) that the Silverado fails to absorb crash forces in foreseeable collisions sufficient to prevent its occupant compartment from collapsing, and (5) that the Silverado's body structure has inadequate strength to resist intrusion under foreseeable frontal crash conditions.

50.    GM failed to adequately crash test its 2014 Chevrolet Silverado 2500HD before releasing it for public sale.

51.    GM designed its 2014 Chevrolet Silverado 2500HD with structural systems incapable of preventing severe intrusion into the occupant compartment when the truck is loaded within the vehicle's listed capacity weight.

52.    GM has knowledge that its trucks are used as work trucks and outfitted with "service bodies" like the one installed on Mr. Bryson's truck.

53.     The service body installed on Mr. Bryson's 2014 Chevrolet Silverado
        2500HD had no safety defect and was within specifications GM knows are
        used to outfit its trucks for commercial uses.

54.     GM negligently designed, tested, manufactured, marketed, distributed, sold,
        and placed the defective Silverado into the stream of commerce.  GM is
        liable for all injuries caused by defects in the Silverado.

55.     Mr. Bryson's Silverado was defective, unreasonably dangerous, and not fit
        for its ordinary use when manufactured and at the time of the subject wreck
        because (a) GM chose designs for its structural components, frame, and
        occupant protection system that were unreasonably dangerous, (b) the risks
        of those designs outweighed the utility of those designs, and (c) other
        alternative designs that were safer, feasible, and technologically available
        were not chosen and used by GM.

56.     Mr. Bryson's injuries and death were proximately caused by the defective
        designs for which GM is responsible.

### III.  LIABILITY OF DEFENDANT

### COUNT ONE

### (Strict Liability of GM)

57.     Plaintiffs incorporate by reference the preceding paragraphs.

58.     GM is strictly liable under O.C.G.A. § 51-1-11 and other applicable law for Grover Bryson's death and his pre-death injuries, pain, and suffering because the risks inherent in the design of the structural system of the 2014 Chevrolet Silverado 2500HD outweighed the utility of the chosen designs, thereby rendering the vehicle defective, unreasonably dangerous, and not reasonably suited to the use for which it was intended.  The defects in the Silverado's design include the following:

a.     The structural system in the 2014 Chevrolet Silverado 2500HD was designed and manufactured in such a manner that it failed to protect Grover Bryson, a foreseeable user, in a foreseeable frontal collision. Its known defects include the weak structure surrounding the occupant space, the structural components' strength relative to the vehicle's weight, the failure of the chassis to adequately deform and manage crash energy in a controlled manner, and an inadequate door structure that failed to provide a load path to resist collision forces.

b.     GM failed to adequately test the 2014 Chevrolet Silverado 2500HD to determine whether its occupants would be exposed to unreasonable risks of physical harm in foreseeable frontal collisions because of the design of the occupant protection system.

    c.      GM knew, or should have known, from tests performed on the 2014 Chevrolet Silverado 2500HD and other vehicles with the same or similar occupant protection systems that the design would fail to properly protect occupants in foreseeable frontal collisions.

    d.      GM knew, or should have known, from basic physics and other real-world wrecks involving the 2014 Chevrolet Silverado 2500HD and other vehicles with the same or similar occupant protection systems that the design would fail to perform properly in foreseeable frontal collisions.

    e.      GM failed to warn occupants and owners, like Grover Bryson, who were unaware of the dangers posed by the 2014 Chevrolet Silverado's structural system even though GM was aware of those dangers, and the very dangers GM failed to warn about came to fruition in the collision in which Grover Bryson was killed.

59.    The defects in the 2014 Chevrolet Silverado 2500HD proximately caused Grover Bryson's injuries and death.

## COUNT TWO

### (GM's Negligence)

60.    Plaintiffs incorporate by reference the preceding paragraphs.

61.   GM, as a product designer and manufacturer, owed a duty to the consuming public in general and Grover Bryson in particular, to exercise reasonable care to design, test, manufacture, inspect, market, and distribute a product free of unreasonable risk of harm to owners, users, and occupants in foreseeable collisions.

62.   When GM designed, tested, manufactured, inspected, marketed, distributed, and sold the 2014 Chevrolet Silverado, GM could have reasonably foreseen and did foresee the occurrence of frontal collisions such as the one described in this Complaint.

63.   GM breached its duty of reasonable care as described in the preceding paragraphs.

64.   GM's negligence proximately caused Mr. Bryson's injuries and death.

## COUNT THREE

### (Failure to Warn Against GM)

65.   Plaintiffs incorporate by reference the preceding paragraphs.

66.   As a manufacturer of vehicles distributed and sold to the public, GM has a duty to adequately warn the public of and remedy unreasonably dangerous conditions in its vehicles.

67.   GM's decision to not convey any warning to consumers of the dangerous conditions in the 2014 Chevrolet Silverado 2500HD and to not remedy those

conditions rendered the Silverado defective and unreasonably dangerous to consumers.

68.   GM failed to adequately warn foreseeable users of the unreasonably dangerous and defective condition in the 2014 Chevrolet Silverado 2500HD, thereby breaching its duty and obligation to the public generally, including the Bryson family.

69.   GM's failure to warn foreseeable users adequately of the known defective and unreasonably dangerous conditions in the subject 2014 Chevrolet Silverado and failure to remedy those conditions proximately caused Plaintiffs' injuries and damages.

## COUNT FOUR

### (Punitive Damages Against GM)

70.   Plaintiffs incorporate by reference the preceding paragraphs.

71.   GM acted with conscious indifference to the safety and well-being of the consuming public as defined under O.C.G.A. § 51-12-5.1 in designing, testing, manufacturing, inspecting, marketing, distributing, selling, and failing to warn about the dangers of the 2014 Chevrolet Silverado 2500HD. GM knew or should have known of those dangers.

72.  GM designed a structural system that it knew or should have known would not maintain the occupant compartment in foreseeable collisions, causing an unjustifiable risk of death for GM's own customers.

73.  Defendant GM's misconduct was so egregious that it rises to the level of conscious indifference to the safety and well-being of the consuming public. That misconduct warrants the imposition of punitive damages against GM.

## IV.  DAMAGES SOUGHT

74.  Plaintiffs incorporate by reference the preceding paragraphs.

75.  The damages claimed by Plaintiffs were proximately caused by the tortious acts and omissions of Defendant, for which Defendant is liable.

76.  Kassidy and Remington Bryson are entitled to recover the following damages for Grover Bryson's injuries and death:

a.  Plaintiff Kassidy Bryson, as Administrator for the Estate of Grover Bryson, claims all damages suffered by Mr. Bryson for which his Estate is entitled to recover against Defendant GM, including, but not limited to:

i.  pre- and post-impact shock, fright, and terror Mr. Bryson experienced prior to his death;

ii.  all components of the mental and physical pain and suffering endured by Grover Bryson; and

iii.  funeral and burial expenses.

b.     Plaintiff Kassidy Bryson, as Administrator for the Estate of Grover

Bryson, also claims punitive damages against GM under O.C.G.A. §

51-12-5.1.

c.     Plaintiffs Kassidy and Remington Bryson, as surviving children of

Grover Bryson, claim compensatory damages for the wrongful death

of Mr. Bryson against Defendant GM.  The measure of Plaintiffs'

wrongful death claim under Georgia law is the full value of the life of

Grover Bryson, both economic and intangible, as determined by the

enlightened conscience of a fair and impartial jury.

d.     Plaintiffs seek damages from Defendant GM to recover all elements

of compensatory and punitive damages allowed by law for the injury

and wrongful death claims alleged in this Complaint.

## V.  PRAYER FOR RELIEF

WHEREFORE Plaintiffs pray for the following relief:

(a)     That summonses issue requiring Defendant to appear as provided by

law to answer this Complaint;

(b)     That service be had upon Defendant as provided by law;

(c)     That Plaintiffs have and recover all damages for all losses

compensable under Georgia law;

(d)     That punitive damages be imposed against Defendant GM;

(e)     That all expenses of litigation, including attorneys' fees, be cast

against the Defendant; and

(f)     For such other and further relief to which Plaintiffs may be entitled at

law or equity, as the Court shall deem just and appropriate.

PLAINTIFFS DEMAND A JURY TRIAL.


Respectfully submitted this 29th day of March, 2024.

CANNELLA SNYDER LLC

*/s/ Robert H. Snyder, Jr.*
TEDRA L. CANNELLA
  Georgia Bar No. 881085
  tedra@cannellasnyder.com
ROBERT H. SNYDER, JR.
  Georgia Bar No. 404522
  rob@cannellasnyder.com
ALEXANDRA "SACHI" COLE
  Georgia Bar No. 696892
  sachi@cannellansnyder.com
DEVIN L. MASHMAN
  Georgia Bar No. 257588
  devin@cannellasnyder.com
WILLIAM D. ORTIZ
  Georgia Bar No. 327613
  will@cannellasnyder.con
HANNAH D. AMANUEL
  Georgia Bar No. 922743
  hannah@cannellasnyder.com

315 W. Ponce de Leon Ave
Suite 885

21

Decatur, GA 30030
(404) 321-1700
(404) 321-1713 Fax

JONES & WALDEN LLC

*/s/ Leon S. Jones*
LEON S. JONES
  Georgia Bar No. 003980
  ljones@joneswalden.com

699 Piedmont Ave NE
Atlanta, Georgia 30308
(678) 701-9235

**ATTORNEYS FOR PLAINTIFFS**